UNITED STATES DISTRICT COURT, MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NIVALDO ALVARENGA SOARES JUNIOR,

    Petitioner,

v.                                CASE NO.

NARA FERNANDA GONCALVES,

    Respondent.

_____/

VERIFIED PETITION FOR THE RETURN OF MINOR CHILDREN PURSUANT TO
INTERNATIONAL TREATY AND FEDERAL STATUTE

Petitioner, NIVALDO ALVARENGA SOARES JUNIOR, by and through his undersigned counsel, and in conjunction with a Motion for Temporary Injunction and Issuance of Arrest Warrant filed contemporaneously herewith, petitions this Court for the expedited return to Brazil of his twelve year old D.M.G.A. and eleven year old J.M.G.A. The children's mother, Respondent, NARA FERNANDA GONCALVES abducted the children from Brazil by stealth and is wrongfully retaining the children in Melbourne, Florida, and pursuant to International Treaty and 42 U.S.C. Section 11601, et seq., Petitioner states:

THE PARTIES

1. The children are currently twelve and eleven years old and have resided in Brazil since birth. Petitioner is the children's biological father and Respondent is the biological mother.

2. Petitioner is a native Brazilian and has resided in Brazil since the children were born. He holds a valid Brazilian passport and is employed in advertising, still residing in Brazil. Petitioner holds a visa for travel to the United States.

3. Respondent is a native Brazilian and has resided in Brazil since before the children were born until 2018. Respondent holds a Brazilian passport. Respondent wrongfully took the children from Petitioner's custody, ostensibly for a vacation and has since been wrongfully retaining the children in Melbourne, Florida.

BACKGROUND

4. Petitioner and Respondent had an ongoing relationship that resulted in the birth of two children in 2010 and 2011. Petitioner was exercising parental custodial rights to the children under court order when Respondent convinced Petitioner to bring them to Florida for a vacation in December 2021.

5. Petitioner returned to Florida to regain custody of the children in February 2022. Respondent refused. She claimed to have a court order from Brazil giving her custody. In March 2022, the Brazilian courts set aside the custody order for Respondent. Petitioner came to Florida on March 12, 2022 to retrieve the children, since his custody rights had been recognized and restored by the

Brazilian court. Respondent refused to release the children and wrongfully retains them as of the date of this petition. The custody order from Brazil dated August 10, 2018 is attached hereto as Exhibit A, with translation. The order setting aside Respondent's order of custody dated March 9, 2022, is attached hereto as Exhibit B.

6. Petitioner has made numerous attempts to secure custody of the children to return to their home in Brazil. Respondent has been nonresponsive to these requests.

7. Petitioner has exercised his objection to the children remaining in the United States.

8. Respondent has begun making up lies about Petitioner's fitness as a parent in response to the United States State Department inquiry of the children's status and possible return to Brazil.

9. Petitioner has vigilantly and diligently pursued the return of the children. This petition is being filed after securing the assistance of counsel.

10. Petitioner is prepared to come to Florida to retrieve custody of his children, should this Court order their arrest pursuant to the temporary restraining order requested.

RESPONDENT'S DEMONSTRATED FLIGHT RISK AND CONTEMPORANEOUS MOTION FOR TEMPORARY RESTRAINING ORDER AND ARREST OF CHILDREN

11. Based on the facts as set forth above and in more detail below, there is a grave and substantial likelihood that Respondent

will continue to violate international law and further violate Petitioner's parental and custodial rights with respect to the children. Respondent's actions evidence a complete disregard for the rule of law. In light of Respondent's past and present actions, to include prior flight and continued concealment of the children, Respondent is a significant and otherwise confirmed, flight risk.

12.     Due to the Respondent's demonstrated propensities and flight risk, Petitioner has filed this Verified Petition in conjunction with a contemporaneous Ex Parte Motion for Temporary Injunction and Application for Arrest Warrant and Temporary Custody, under which, and together with this Verified Petition, Petitioner respectfully request that this Court enter an order which provides for the following:

a. Upon a finding that Petitioner has made a prima facie case for his Ex Parte Motion for Temporary Restraining Order and Application for Arrest Warrant and for Temporary Custody, and that Respondent presents a flight risk if given advance notice of these proceedings, issue a warrant directing the U.S. Marshal Service or other law enforcement authority to arrest the children, remove them from Respondent's control and thereafter serve Respondent with notice of the proceedings;

b. Grant temporary physical custody of the children to Petitioner;

c. Issue an order requiring Respondent to (1) remain within the jurisdiction of this Court pending resolution of this matter and

(2) surrender each of her and the children's passports, visas and other travel documentation, if any to the court and (3) order Respondent to appear before the Court to show cause as to why the children should not be returned to Brazil in the company of Petitioner;

d. In the event Respondent opposes the Petition, set an expedited final hearing on Petitioner's Verified Petition for Return; and

e. Order that the children be returned forthwith to Brazil in the company of their father, Petitioner, or his designated agent.

THE HAGUE CONVENTION and
THE INTERNATIONAL CHILD ABDUCTION REMEDIES ACT

13.    This Petition is brought pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980, and 42 U.S. C Section 11603)b), the International Child Abduction Remedies Act. The United States of America assisted in drafting the Convention and became a signatory to the Convention in 1981.  The International Child Abduction Remedies Act was created to deal with the sudden abduction of children and to allow a petitioner to assert his rights in exigent circumstances. See Distler v. Distler, 26 F. Supp. 2d 723, 727 (D.N.J. 1998).

14.    Petitioner, a Brazilian citizen, seeks the return of his minor children to Brazil which has been their habitual residence since birth.  Respondent has been, and is currently, wrongfully retaining

the children in the United States of America in violation of The

Hague Convention and the International Child Abduction Remedies

Act.

15.    This is not a custody case.  Rather, the objectives of the

Hague Convention are to (i) secure the prompt return of a child

wrongfully removed or retained in any contracting state, and (ii)

ensure that rights of custody and access under the laws of one

contracting state are effectively respected in other contracting

states.  Accordingly, the purpose of a Hague petition is to effect

the return of an abducted or wrongfully retained child/children to

their country of habitual residence so that the country of habitual

residence decides issues of permanent custody.

16.    Brazil and the United States are both signatories to the

Convention and are therefore contracting states.  See United States

Department of State's Hague Abduction Convention List, available

at:

http//travel.state.gov/content/childabduction/English/country/ha

gue-party-countries.html.

17.    The Court must return the children to Brazil because, under

the Convention and the International Child Abduction Remedies Act,

a preponderance of the evidence establishes that:

a. Brazil was the children's birth place and habitual residence until

December 13, 2021 when Respondent convinced Petitioner to bring

the children to Florida, and never intended to return them to

Brazil.  She has continued to wrongfully retain the children in the United States since that time;

b. Petitioner was exercising his Brazilian parental and custody rights at the time Respondent wrongfully retained them in the United States.  There was no consent given by Petitioner to change the children's residence from Brazil, and in fact, he expressly opposed the retention of the children out of Brazil;

c. The children are under 16 years old; and

d. None of the narrow exceptions to mandatory return under the Convention apply.  Brazil is the appropriate country to make all determinations regarding custody of, and access to, Petitioner's children.

## JURISDICTION AND VENUE

18.    The Court has jurisdiction pursuant to 42 U.S.C. Section 11603(a) and International Child Abduction Remedies Act Section 9003 because this is an action arising under the Hague Convention and involves the wrongful taking and retention by Respondent of the children whose habitual residence is Brazil.  The Court also has jurisdiction under 28 U.S.C. Section 1331 because this is a civil action arising under federal law and a treaty of the United States of America.

19.    This Court has personal jurisdiction over Respondent because she is physically present within this district and is wrongfully retaining the children in this district.

20.     Venue is proper under 42 U.S.C. Section 11603(b) and 28 U.S.C. Section 1391 (b)(1) because the children are currently located in Brevard County, at the address of 3168 Wyndam Way, Melbourne, Florida 32940, which is within the jurisdiction of this Court.

GENERAL ALLEGATIONS

21.     Since their births in 2010 and 2011, Brazil has been the Children's Habitual residence. Although residing separately since 2014, Petitioner and Respondent jointly exercised parental rights, although custody of the children has primarily been with Petitioner. The Children entered Brazilian school system in Juiz de Fora, Brazil, and began attending school in 2013 and 2014.

COUNT I-RETURN OF THE CHILD UNDER THE HAGUE CONVENTION AND ICARA

22.     Petitioner re-alleges the allegations contained in paragraphs 1-21 as if fully set forth herein.

23.     Pursuant to the Convention, when a child has been wrongfully retained, the court in the Contracting State in which the petition is filed **"shall** order the return of the child forthwith" to the child's state of habitual residence, subject to limited exceptions. See Convention, articles 1,3,4,12-13, and 20 (Emphasis added).

24.     In this case, Respondent's wrongful retention of the Children in the United States is in violation of the Convention and ICARA because (i) prior to the wrongful retention, the Children were

habitual residents of Brazil;(ii) the retention of the Children in the United States of America is in breach of Petitioner's rights of custody to the Children under Brazilian law;(iii)Petitioner was exercising his rights of custody to the Children at the time of the abduction and subsequent wrongful retention, and (iv) the Children are under 16 years of age. *See* Convention articles 3 and 4.

25.    As set forth above, Brazil was the Children's habitual residence since birth and where the Children attended school and engaged in both academic and extra-curricular activities under Petitioner's parental custody and care; in addition to Petitioner, the Children have established relationships with extended family and friends residing in Brazil.

26.    Petitioner has custody rights to the Children pursuant to Brazilian law and pursuant to the Hague Convention. Petitioner was exercising these rights at the time the Children were abducted and thereafter wrongfully retained in the United States of America. Further, there is no outstanding Brazilian court order terminating Petitioner's rights of custody and/or otherwise authorizing Respondent's continued retention of the Children in the United States of America or elsewhere.

27.    In the efforts to abduct and conceal the Children, Respondent convinced Petitioner to bring the children to Florida for a vacation with the intent to never return them. Her deception was

successful as she terminated all contact with Petitioner once she arrived and has refused Petitioner's efforts to retrieve the children. Petitioner remains in contact with his children.

PROVISIONAL REMEDIES

28.    Pursuant to the Convention, "[i]n furtherance of the objectives of…the Convention…[the Court] may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the further removal or concealment before the final disposition of the petition." 42 U.S.C. Section 11604.

29.    Pursuant to ICARA § 11604, "[n]o court exercising jurisdiction [in a proceeding for the return of a child]… may… order a child removed from a person having physical control of the child unless the applicable requirements of State law are satisfied." 42 U.S.C. § 11604.

30.    In Florida, the Uniform Child Custody Jurisdiction and Enforcement Ace ("UCCJEA"), Chapter 61, Part II of the Florida Statutes, governs the resolution of both domestic and international child custody disputes. Section 61.534 authorizes a court, upon finding that the child is "likely to imminently suffer serious physical harm or removal from this state," to issue a warrant to take physical custody of the child. § 61.534(2), Fla. Stat. Sub-section (6) provides that the court "may impose

conditions upon placement of a child to ensure the appearance of the child and child's custodian."

31.    As set forth herein, the Children are "likely to imminently suffer… from this state," and this Court is therefore authorized to issue a warrant to prevent the Children's removal from this state.

32.    The information specified in section 61.522, <u>Florida Statutes</u>, is provided below in an abundance of caution, in the event that this Court interprets these provisions to be applicable requirements of the State law required to be satisfied by 42 U.S.C. § 11604(b). As it pertains to this instant matter:

a. The Children are presently located, upon information and belief in Melbourne, Fl with Respondent, without the Petitioner's consent.

b. The Children habitually resided in Brazil under the joint parental responsibility of both Petitioner and Respondent since birth and through the date Respondent wrongfully retained the children. Custody of the children was court ordered to be with Petitioner.

c. Petitioner does not have information of any custody proceeding concerning the children pending in any other court of this or any other State, other than the information provided in this Petition.

d. Petitioner does not know of any person or institution nor a party to the proceedings who has physical custody of the Petitioner's children who claims to have rights of parental responsibility or

legal custody or physical custody of, or visitation or parenting time with the children.

33.    Under the circumstances, this Court has the authority to issue a Warrant of Arrest for the Children and to otherwise direct the United States Marshal Service to serve this Petition on the Respondent *after the Children are secured* and to command Respondent to appear before this Court immediately, so that the provisions of 42 U.S.C.§11604 can be met.

34.    Petitioner will be in Orlando as expeditiously as possible once learning of this Court's issuance of the orders requested and available to take immediate temporary custody of the Children upon order by this Court. Upon the children's arrest by the United States Marshal Service, Petitioner requests that the children be placed with Petitioner or his designated agent pending the final evidentiary hearing in this Court because Respondent's actions to date demonstrate Respondent represents a signification flight risk; an order prohibiting her from fleeing the jurisdiction with the Children will be insufficient.

35.    In addition, and pending the final evidentiary hearing in this Court, it is requested that this Court issue an immediate order prohibiting the removal of the Children from the jurisdiction of this Court, taking into safe-keeping all of the Respondent's and Children's travel documents, and setting an expedited hearing on this Petition.

36.    Pursuant to 42 U.S.C. §11603(c), Respondent will be given notice of any *non-ex parte* hearing consistent with §§61.518 and 61.532, <u>Florida Statutes</u>.

37.    Based upon the foregoing, Petitioner respectfully requests this Court grant the relief requested herein and by Petitioner's corresponding and contemporaneously filed motions.

### ATTORNEY'S FEES AND COSTS INCLUDING TRANSPORATION EXPENSES PURSUANT TO CONVENTION ARTICLE 26 AND ICARA 11607

38.    Petitioner has incurred expenses as a result of the wrongful retention of the minor Children by Respondent. Petitioner will submit a copy of all expenditures as soon as practicable and possible and will amend these costs, from time to time, according to proof and in light of further expenditure required because of wrongful retention.

39.    Petitioner respectfully requests that this Court award all legal costs and fees incurred to date as required by ICARA § 11607, reserving jurisdiction over further expenses.

### RESPONDENT'S DEMONSTRATED FLIGHT RISK AND THE NEED FOR TEMPORARY RESTRAINING ORDER AND ARREST OF CHILDREN

40.    Based upon the facts as set forth above, there is a grave and substantial likelihood that Respondent will continue to violate international law and Petitioner's parental and custodial rights. Respondent has made false statements about Petitioner and purposely wrongfully retains the children, in addition to ignoring Petitioner's efforts to see his children. Respondent's actions

demonstrate a complete lack of candor, and a willingness to ignore court directives.

41.    The foregoing, coupled with Respondent's deliberate efforts to alienate the children from Petitioner and otherwise sever their relationship, demonstrates Respondent has absolutely no intention of voluntarily returning the children to Brazil, let alone complying with a court order.    Respondent's past and present actions, including flight and continued concealment of the children, therefore render Respondent a significant and confirmed flight risk.

WHEREFORE, Petitioner respectfully requests that the Court enter an order to the following effect:

a. Upon a finding that Petitioner has made a prima facie case for his Ex Parte Motion for Temporary Injunction and Application for Warrant of Arrest and Temporary Custody, and that Respondent presents a flight risk if given advanced notice of these proceedings, issue warrant directing the U.S. Marshall Service or other law enforcement authority to arrest the children, remove them from Respondent's control and thereafter serve Respondent with notice of these proceedings;

b. Grant temporary physical custody of the children to Petitioner or his agent, pending a final determination on the Petitioner, who will voluntarily surrender his own visas, passports and other

travel documents, as well as the replacement travel documents secured by Petitioner for the children, to the Court unless and until directed otherwise by this Court;

c. Issue an order requiring Respondent to (1) remain within the jurisdiction of this Court pending resolution of this matter and (2) surrender each of her and the children's passports, visas and other travel documentation, if any, to the Court and (3) order Respondent to appear and show cause as to why the children should not be returned to Brazil in the company of Petitioner;

d. If necessary, set an expedited final hearing on Petitioner's Verified Petition for Return; and

e. Order that the children be returned forthwith to Brazil in the company of their father, Petitioner.

**Declaration Under Penalty of Perjury Pursuant to 28 U.S.C.§1746(1)**

I declare penalty of perjury under the laws of the United States of America that I have reviewed this Verified Petition in its original and translated form and that the foregoing is true and correct.

Executed of this __19__ day of __July__, 2022.

_____

NIVALDO ALVARENGA SOARES JUNIOR

Notary:

15 of 16

Tabelionato do 1º Ofício de Notas
Reconheço, por autenticidade, a(s) assinatura(s) de
NIVALDO ALVARENGA SOARES JUNIOR
em testemunho de verdade.
Juiz de Fora, 14/07/2022 15:12:29 21020

SELO DE CONSULTA: FUC18480
CÓDIGO DE SEGURANÇA: 8684.6359.0143.6479
Quantidade de atos praticados: 01

Ato(s) praticado(s) por:
Paula Macedo Marquez - Escrevente Autorizada
Emol:R$7,04 TFJ:R$2,19 Total:R$9,23 ISS:R$0,35
Consulte a validade deste selo no site: https://selos.tjmg.jus.br

Nº DA
ETIQUETA
ABQ444461

Respectfully submitted,

Gary S. Israel, P.A
Attorney for Petitioner
Florida Bar No. 270709
121 S. Orange Ave., Ste 1500
Orlando, Florida 32801
P | 407.210.3834
F | 407.425.1616
attorneyisrael@hotmail.com

EXMo(a). SR(a). DR(a). JUIZ(a) DE DIREITO DA 2ª VARA DE FAMÍLIA DA COMARCA DE JUIZ DE FORA - MG

Processo n°.: 0268475-18.2015.8.13.0145

MAÇO N°.: 1968

**NIVALDO ALVARENGA SOARES JUNIOR** e **NARA FERNANDA GONÇALVES**, ambos já qualificados nos autos do processo acima discriminado relativo à *REGULAMENTAÇÃO CONSENSUAL DE GUARDA E ALIMENTOS* de seus filhos DIEGO MATTOS GONÇALVES ALVARENGA e JUAN MATTOS GONÇALVES ALVARENGA, menores impúberes, neste ato representado por seus pais, vêm, conjuntamente, perante V. Ex°., por seu procurador abaixo qualificado, informar e requerer o seguinte:

1. Inicialmente, requerem as partes o desarquivamento do feito, cuja respectiva guia de custas devidamente quitada segue anexa.

2. Desde o mês de dezembro de 2017, os 02 (dois) filhos do casal (Diego e Juan) estão morando exclusivamente com o pai (Nivaldo), mediante consentimento da mãe (Nara), eis que esta saiu do país.

3. Assim, visando regularizar a relação jurídica familiar das crianças e dos pais, estes chegaram a um consenso, no sentido de alterar a forma da moradia, visitação e alimentos, estabelecida anteriormente no acordo realizado entre os pais, e devidamente homologado por este D. Juízo no presente feito.

4. Desta forma, pretendem os pais, com a presente petição, formalizar a atual forma da moradia, visitação e alimentos dos menores, no sentido de proceder nova regulamentação da situação jurídica familiar dos filhos e dos pais, na seguinte forma:

Ex A



Assinado eletronicamente por: MATEUS MACHADO FERREIRA - 25/07/2018 18:56:23
https://pje.tjmg.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=18072518562271200000046915914
Número do documento: 18072518562271200000046915914



a) a guarda dos menores permanecerá compartilhada entre os pais, sendo que, entretanto, a moradia dos filhos Diego e Juan passa a ser temporária exclusiva com o pai Nivaldo, garantido à mãe a visitação livre;

b) o pai se obriga a arcar, a cada 02 (dois) anos -intercalado ao item 'c' abaixo-, com os custos de 15 (quinze) diárias de hospedagem em hotel (nível 3 estrelas) neste país, para a mãe desfrutar com os filhos Diego e Juan o período das férias escolares;

c) o pai se obriga a levar, a cada 02 (anos) -intercalado ao item 'b' acima-, os filhos Diego e Juan para passarem 15 (quinze) dias consecutivos das férias escolares na cidade que a mãe estiver residindo;

d) a mãe desde já autoriza o pai a realizar viagens internacionais com os filhos Diego e Juan, inclusive para possibilitar a previsão da letra 'c' acima, valendo a assinatura da mãe neste acordo como autorização para todos os efeitos, inclusive perante às autoridades competentes, se comprometendo a mãe, desde já, a assinar quaisquer outros documentos que eventualmente se fizer necessário para possibilitar tais viagens;

5. Por todo o exposto, tendo sido tudo pactuado de comum acordo entre as partes, na forma aqui apresentada, REQUEREM a V. Ex²., após a intimação do *Parquet*, na forma de estilo, para a manifestação que entenda cabível, a **homologação judicial desta NOVA regulamentação de moradia, visitação e alimentos**, na forma aqui pactuada, por sentença, **desistindo as partes desde já do prazo recursal**, para que produza seus jurídicos e legais efeitos.

Nestes termos, Pedem deferimento.
Juiz de Fora, 10 de Abril de 2018.

P.p.
**MATEUS MACHADO FERREIRA**
OAB/MG 84.465

Declaramos para os devidos fins de Direito que tomamos conhecimento do teor integral desta petição, aquiescendo integralmente com o seu teor e forma, como declarado, para os regulares efeitos de Direito.

Nivaldo Alvarenga Soares Junior                Nara Fernanda Gonçalves



Assinado eletronicamente por: MATEUS MACHADO FERREIRA - 25/07/2018 18:56:23
https://pje.tjmg.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=18072518562271200000046915914
Número do documento: 18072518562271200000046915914

(IMAGE ATTACHED CONTAINING THE FOLLOWING)


**HONORABLE JUDGE OF LAW OF THE SECOND FAMILY COURT OF THE JUIZ DE FORA COUNTY – MINAS GERAIS**

**Case file No.: 0268475-18.2015.8.13.0145**


PACK No.: 1968


     **NIVALDO ALVARENGA SOARES JUNIOR** and **NARA FERNANDA GONCALVES**, both already qualified in the case file above, regarding the CONSENSUAL CUSTODY AND ALIMONY AGREEMENT of their children DIEGO MATTOS GONCALVES ALVARENGA and JUAN MATTOS GONCALVES ALVARENGA, impubescent minors, in this act represented by their parents, come together; before Your Honor, by their attorney qualified below, inform and request the following:

     1. Initially, the parties request the unarchive of the case, whose respective costs, duly paid, is attached.

     2. Since December 2017, the couple's 02 (two) children (Diego and Juan) have been living exclusively with their father (Nivaldo), with their mother's consent (Nara), as she left the country.

     3. Thus, in order to regularize the legal family relationship of children and parents, they reached a consensus, in the sense of changing the form of residence, visitation and alimony previously established in the agreement reached between the parents, and duly approved by this Court in the present case.

     4. In this way, the parents intend, with this petition, to formalize the current form of residence, visitation and alimony of and for the minors, in order to proceed with new regulation of the family legal situation of the children and parents, in the following way:

a) legal custody of the minors will remain shared between the parents, however, the physical custody of the children Diego and Juan becomes temporary exclusively with their father Nivaldo, being guaranteed free visitation to the mother;

b) the father undertakes the obligation to pay, every 02 (two) years -interspersed with item 'c' below-, with the costs of 15 (fifteen) days of accommodation in a hotel (3-star level) in this country, for the mother to enjoy the school holidays with the children Diego and Juan;

c) the father undertakes the obligation to take, every 02 (years) -interspersed with item 'b' above-, the children Diego and Juan to spend 15 (fifteen) consecutive days of school holidays in the city where the mother is residing;

d) the mother hereby authorizes the father to carry out international trips with the children Diego and Juan, including to enable the provision of the letter 'c' above, being the mother's signature in this agreement valid as authorization for all purposes, including before the competent authorities, with the mother committing, from now on, to sign any other documents that may be necessary to enable such trips.

5. For all of the foregoing, everything having been agreed upon by common agreement between the parties, in the form presented here, REQUEST Your Honor, <u>after the prosecutor's subpoena</u>, according to the formalities, for the manifestation that (s)he understands appropriate, the **<u>judicial approval of this NEW residence, visitation and alimony agreement</u>**, as agreed herein, by final judgment, **the parties giving up the appeal period,** so that it produces its juridical and legal effects.

In these terms, they ask for grant.
Juiz de Fora, April 10, 2018.

**P.p.**

(signature)
**MATEUS MACHADO FERREIRA**
Order of Attorneys of Brazil/State of Minas Gerais 84.465

We declare for the due legal purposes that we are aware of the full content of this petition, fully agreeing with its content and form, as stated, for the regular legal purposes.

(signature)                                    (signature)
Nivaldo Alvarenga Soares Junior        Nara Fernanda Goncalves

## CERTIFICATE OF TRANSLATOR'S COMPETENCE

I, Vitor Jacob Cruz, hereby certify that I am competent and proficient in both the <u>English and Portuguese</u> languages, and that the above translation is a true, accurate, and complete rendition of the <u>Portuguese</u> version of the original document.

Signature: _____          Date: 03/17/2022

Vitor Jacob Cruz

4000 NW 4th Ave, Boca Raton, FL 33431
vitorjacob.vj@gmail.com
(561)342-2020



Poder Judiciário do Estado de Minas Gerais
Tribunal de Justiça



Nº 1.0000.22.043589-5/001





2 0 2 2 0 0 0 3 1 2 2 7 8

AGRAVO DE INSTRUMENTO-CV
Nº 1.0000.22.043589-5/001
AGRAVANTE(S)
AGRAVADO(A)(S)

8ª CÂMARA CÍVEL ESPECIALIZADA
JUIZ DE FORA
N.A.S.J.
N.F.G.

### DECISÃO

**Vistos.**

Trata-se de Agravo de Instrumento, com pedido de efeito suspensivo, interposto por N.A.S.J. contra decisão proferida pelo d. Juízo da 2ª Vara de Família da Comarca de Juiz de Fora, nos autos da Ação Ordinária de Modificação de Cláusula e Regime de Convivência ajuizada por N.F.G., que deferiu o pedido de tutela de urgência, nos seguintes termos (ordem 68):

> (...)
> Quanto à guarda provisória, como se sabe, em procedimento desta natureza, sempre há de prevalecer o interesse do menor, cujo bem-estar recomenda cautela, em termos superiores a qualquer pretensão dos próprios genitores, conforme está na previsão legal e é de reiterada interpretação jurisprudencial de nossos Tribunais.
> Ao compulsar dos autos, depreende-se que os menores encontram-se adaptados ao núcleo familiar materno, inexistindo elementos a contraindicarem a concessão da guarda provisória, ao menos, em cognição sumária.
> Destarte, as provas carreadas ao feito, notadamente os exames acostados em IDs 830080807 e 8300808072 atestando que os menores em questão encontram-se acometidos por Covid-19, situação que, em razão das medidas de prevenção à disseminação da mazela hodiernamente adotadas em âmbito mundial, configura-se impeditiva ao seu retorno imediato ao Brasil e pode ocasionar prejuízo para a formação dos menores, eis que as aulas presenciais já foram retomadas nesta Comarca de Juiz de Fora. Nesta senda, pressupondo atendimento ao melhor interesse dos infantes, até que melhor juízo se forme, e comprovado o vínculo de parentesco (ID

Fl. 1/11

Número Verificador: 100002204358950012022312278



 **Poder Judiciário do Estado de Minas Gerais**
**Tribunal de Justiça** 

Nº 1.0000.22.043589-5/001

82792281390- Págs.1/2), DEFIRO a guarda provisória
de D.M.G.A. e J.M.G.A. à genitora N.F.G.
(...)

A parte requerida, ora agravante, sustenta que "*a decisão ora
recorrida acabou por autorizar a mudança abrupta da residência dos
menores para o exterior, retirando-os da custódia física do pai ora
agravante, e, consequentemente, ratificando a intenção da genitora em
reter ilegalmente os menores no exterior, em flagrante violação à
Convenção de Haia sobre os Aspectos Civis do Sequestro
Internacional de Crianças, ratificada pelo Brasil através do Decreto
3.413/2000*".

Aduz que "*o d. Juízo de primeiro grau inverteu a ordem natural
de um processo cujo objetivo final é a alteração da residência dos
menores para o exterior, e, ainda que se admita a alteração da
custódia das crianças, por certo deveria aguardar o trâmite processual
para uma maior segurança jurídica, isto é, deveria primeiro realizar o
estudo psicossocial, seja porque não existe nenhum motivo grave que
justifique a imediata mudança dos menores, seja porque existe um
perigo da demora inverso, no sentido de que eventualmente
consolidará a situação dos menores nos EUA, isto é, poderá ocorrer a
integração dos menores em seu novo meio, em total prejuízo à defesa
do pai ora agravante, e mais, uma mudança de país e de referência
pode representar uma experiência traumática aos menores, que deve
ser evitada nessa fase de vida. Aliás, o STJ já consolidou
entendimento de que para uma transferência internacional de menor, é
necessário a realização prévia de estudo psicossocial, sendo certo que
tal prova pericial deve ser realizada pelo Juízo da residência habitual,
isto é, aqui no Brasil, donde necessária a presença dos menores no
brasil, sob pena de nulidade do processo*".

Destaca que "*a guarda dos menores é compartilhada, porém a
moradia/custódia dos menores é exclusiva do pai desde dezembro de
2017, quando a mãe optou, durante viagem sozinha nos EUA, em lá*

Fl. 2/11

 **Poder Judiciário do Estado de Minas Gerais**
**Tribunal de Justiça** 

Nº 1.0000.22.043589-5/001

*permanecer, abandonando o Brasil, onde deixou os menores, sem nenhuma conversa prévia, com o genitor ora agravante, na época em que a moradia das crianças era alternada entre os genitores durante a semana. Aqui, vale ressaltar uma omissão da petição inicial - talvez proposital, para induzir o juízo a erro- com relação ao histórico de vida dos menores: estes sempre residiram com o pai – ainda que de forma alternada, num determinado período que foi pós a ruptura da união estável dos genitores até a moradia exclusiva só com genitor ora agravante*".

Assinala que "*pelas regras atualmente vigentes (estabelecidas no segundo acordo), que diante da moradia dos menores de forma exclusiva com o pai, este se obrigou a arcar com a estadia da mãe quando ela viesse ao Brasil, a cada dois anos, e, de forma intercalada, também a cada dois anos, o pai se obrigou a levar as crianças para passarem férias com a mãe na cidade que esta estivesse residindo. E, conforme se demonstrará mais abaixo, o pai ora agravante sempre cumpriu com estas obrigações específicas –além de todas as demais- ao contrário do que alegado pela autora ora agravada e desde já expressamente impugnado, até mesmo por que o genitor sempre concedeu muito mais, admitindo diversas vezes que a mãe permanecesse na custódia das crianças. Neste sentido, os genitores acordaram que nas férias escolares de 2021/2022, ao invés dos menores permanecerem 15 dias com a mãe na cidade dela (EUA), as crianças ficariam por 02 (dois) meses, desde meados de Dezembro/2021 até meados de Fevereiro/2022, quando o pai traria os menores de volta para a residência paterna, para o retorno das aulas presenciais*".

Pondera que "*apesar da narrativa envolvente da petição inicial, não há prova efetiva de qual série/ano os menores foram matrículados na escola do exterior, já que os documentos vinculados ao ID nº 8279462995 (supostos currículos escolares dos menores no EUA), não*

Número Verificador: 10000220435895001202231278

 **Poder Judiciário do Estado de Minas Gerais**
**Tribunal de Justiça** 

Nº 1.0000.22.043589-5/001

*informam sequer as matérias que estão sendo cursadas pelos menores, podendo inclusive ser apenas uma matrícula na qualidade de "ouvinte", sem comprovação de um estudo válido, para o caso de um posterior retorno ao Brasil. Ademais, não há nos autos nenhuma fotografia dos menores dentro de sala de aula, por exemplo, havendo apenas fotos de ambientes (que podem ser retiradas da internet, inclusive), ou fotos dos menores com mochila dando a entender que seria na entrada da escola, mas que pode ser um shopping, ou mesmo uma colônia de férias. Assim, no mínimo existe uma dúvida quanto à efetiva educação dos menores lá nos EUA, até mesmo porque, conforme e-mail do colégio Grambery (onde os menores estudam no Brasil desde sempre), não foi entregue à genitora nenhuma documentação dos menores que seria necessário para a transferência / matrícula em qualquer outra instituição educacional. Por outro lado, e de forma totalmente contrária, o pai réu ora agravante apresenta relatórios do Colégio Grambery (cópias anexas) comprovando não só as efetivas matrículas escolares dos menores para o presente ano letivo de 2022, como também a boa relação sócio-pedagógica das crianças, corroborado pelos ótimos desempenhos quando ela vinha ao Brasil, e mais, levou inclusive mais de uma vez, num intervalo inferior a 1 ano, os menores para os EUA, onde a mãe reside, para que aqueles passassem férias com a genitora, sempre buscando o melhor interesse dos menores, para manter o vínculo maternal".*

Pondera que "*o melhor interesse das crianças nem sempre é o que elas expressam, considerando inclusive a situação fática do caso em tela, isto é, que os menores estão vindo de uma situação totalmente atípica para todos, e em especial para crianças, que é a pandemia, onde ficaram limitadas do convívio com a sociedade, o que foi seguido à risca pelo pai, tudo em prol da saúde, e, de repente, os menores se veem um paraíso infantil, literalmente, que é a Disneylândia, com parques maravilhosos, em que inclusive a mãe ora*

 **Poder Judiciário do Estado de Minas Gerais**
**Tribunal de Justiça** 

Nº 1.0000.22.043589-5/001

*agravada tem dificuldade de impor limites aos filhos, conforme aliás*
*mensagem que ela mesmo enviou ao pai ora agravante, solicitando*
*ajuda para este junto às crianças no dia 05/01/2022*".

Portanto, pugna pela atribuição de efeito suspensivo. Ao final,
requer o conhecimento, processamento e provimento do recurso, com
a reforma da decisão agravada.

**É o sucinto relatório.**

**Conheço preliminarmente** do recurso, pois, a princípio,
vislumbro a presença dos pressupostos intrínsecos e extrínsecos de
admissibilidade.

De acordo com o artigo 995, do Código de Processo Civil, em
regra, os recursos não impedem a eficácia da decisão. Todavia em seu
parágrafo único estabelece que a eficácia da decisão recorrida poderá
ser suspensa pelo Relator. Cita-se:

> Art. 995. Os recursos não impedem a eficácia da
> decisão, salvo disposição legal ou decisão judicial em
> sentido diverso. Parágrafo único. A eficácia da
> decisão recorrida poderá ser suspensa por decisão do
> relator, se da imediata produção de seus efeitos
> houver risco de dano grave, de difícil ou impossível
> reparação, e ficar demonstrada a probabilidade de
> provimento do recurso.

No que tange ao recurso de agravo de instrumento, observa-se
que o artigo 1.019 do mesmo Diploma Processual dispõe sobre o
recebimento do agravo de instrumento. *In verbis*:

> Art. 1.019. Recebido o agravo de instrumento no
> tribunal e distribuído imediatamente, se não for o caso
> de aplicação do art. 932, incisos III e IV, o relator, no
> prazo de 5 (cinco) dias:
> I - poderá atribuir efeito suspensivo ao recurso ou
> deferir, em antecipação de tutela, total ou
> parcialmente, a pretensão recursal, comunicando ao
> juiz sua decisão;
> II - ordenará a intimação do agravado pessoalmente,
> por carta com aviso de recebimento, quando não tiver
> procurador constituído, ou pelo Diário da Justiça ou
> por carta com aviso de recebimento dirigida ao seu





Poder Judiciário do Estado de Minas Gerais
Tribunal de Justiça

Nº 1.0000.22.043589-5/001

advogado, para que responda no prazo de 15 (quinze) dias, facultando-lhe juntar a documentação que entenda necessária ao julgamento do recurso;
III - determinará a intimação do Ministério Público, preferencialmente por meio eletrônico, quando for o caso de sua intervenção, para que se manifeste no prazo de 15 (quinze) dias.

Sobre o tema lecionam Marinoni, Arenhart e Mitidiero no Livro Código de Processo Civil Comentado:

> Efeito Suspensivo. O agravo não tem, em regra, efeito suspensivo. Pode o relator, contudo, suspender liminarmente a decisão recorrida, atribuindo efeito suspensivo ao recurso até ulterior julgamento (art. 1.019, I, CPC). Os requisitos para concessão de efeito suspensivo são aqueles mencionados no art. 1.012, §4º, CPC – analogicamente aplicável. A outorga de efeito suspensivo é a medida adequada quando se pretende simplesmente suspender os efeitos da decisão recorrida. O relator não pode agregar efeito suspensivo ao agravo de ofício, sendo imprescindível o requerimento da parte (analogicamente, art. 1.012,§3º, CPC). Deferido o efeito suspensivo, deve o relator comunicar ao juiz da causa a sua decisão.
>
> Antecipação da tutela recursal. Quando o recorrente pretende a concessão de tutela jurisdicional ao direito negada pela decisão recorrida, obviamente não se mostra adequado postular a outorga de efeito suspensivo ao agravo, já que suspender uma omissão jurisdicional não produz qualquer efeito no plano concreto. É de rigor que se requeria nesse caso a antecipação da tutela recursal – vale dizer, que o relator conceda exatamente aquela providência que foi negada pela decisão recorrida. O relator pode fazê-lo, deferindo total ou parcialmente a antecipação da tutela recursal (arts. 294, 300, 311 e 1.019, I, do CPC). Os requisitos para concessão da antecipação da tutela variam de acordo com o contexto em que se insere o recorrente. (...) (2015, p.949/950).

Cuida-se de Ação Ordinária de Modificação de Cláusula e Regime de Convivência ajuizada por N.F.G. (genitora) em face de N.A.S.J. (genitor), tendo formulado tutela de urgência para concessão de guarda unilateral, "*sendo permitida a permanência dos menores nos*

 

**Poder Judiciário do Estado de Minas Gerais**
**Tribunal de Justiça**

Nº 1.0000.22.043589-5/001

*Estados Unidos na companhia materna, onde já está desde dezembro de 2021"* (ordem 27).

Junto da petição inicial, depreende-se que: I) a genitora conta com 41 anos de idade; II) a genitora possui carteira de motorista temporária da Flórida/EUA; III) os filhos menores possuem 12 e 10 anos de idade; IV) cópia de petição de acordo, constando a moradia exclusiva com o pai, garantido à mãe visitação livre – datada de julho de 2018; V) cópia da sentença homologatória do acordo; VI) manifestações dos filhos menores expondo a vontade de morar com a mãe nos EUA; VII) cartões de vacinação dos filhos, nos EUA; VIII) carteira profissional da genitora nos EUA; IX) imagens fotográficas do novo casamento da genitora realizado nos EUA, da suposta residência da família, dos infantes, de eventos sociais; X) indicação da escola em que os infantes estariam matriculados; XI) mensagens entre a genitora e o genitor datadas de 2019 – sobre a possibilidade de mudança dos infantes para os EUA; XII) arquivo de áudio, supostamente da atual esposa do genitor; XIII) constam currículos escolares dos infantes, datado de janeiro de 2022; XIV) vídeos de conversas entre as partes e pedido de um dos filhos para permanecer nos EUA; e XV) petição datada de 10 de fevereiro de 2022, informado a impossibilidade de retorno ao Brasil, pela família ter sido acometida de COVID-19 (ordens 28/54 e 58/59).

A respeito do acordo homologado, imperiosa indicação dos termos (ordem 31):

Número Verificador: 1000022043589500120223122278



**Poder Judiciário do Estado de Minas Gerais**
**Tribunal de Justiça**



Nº 1.0000.22.043589-5/001

8. Desta forma, pretendem os pais, com a presente petição, formalizar a atual forma da moradia, visitação e alimentos dos menores, no sentido de proceder nova regulamentação da situação jurídica familiar dos filhos e dos pais, na seguinte forma:

a) a guarda dos menores permanecerá compartilhada entre os pais, sendo que, entretanto, a moradia dos filhos Diego e Juan passa a ser temporária exclusiva com o pai Nivaldo, garantido à mãe a visitação livre;

b) o pai se obriga a arcar, a cada 02 (dois) anos –intercalado ao item 'c' abaixo-, com os custos de 15 (quinze) dias diárias de hospedagem em hotel (nível 3 estrelas) neste país, para a mãe desfrutar com os filhos Diego e Juan o período das férias escolares;

c) o pai se obriga a levar, a cada 02 (anos) -intercalado ao item 'b' acima-, os filhos Diego e Juan para passarem 15 (quinze) dias consecutivos das férias escolares na cidade que a mãe estiver residindo;

d) a mãe desde já autoriza o pai a realizar viagens internacionais com os filhos Diego e Juan, inclusive para possibilitar a previsão da letra 'c' acima, valendo a assinatura da mãe neste acordo como autorização para todos os efeitos, inclusive perante às autoridades competentes, se comprometendo a mãe, desde já, a assinar quaisquer outros documentos que eventualmente se fizer necessário para possibilitar tais viagens.

9. Por todo o exposto, tendo sido tudo pactuado de comum acordo entre as partes, na forma aqui apresentada, REQUEREM a V. Exª., após a intimação do _Parquet_, na forma de estilo, para a manifestação que entenda cabível, a **homologação judicial desta NOVA regulamentação de moradia, visitação e alimentos**, na forma aqui pactuada, por sentença, **desistindo as partes desde já do prazo recursal**, para que produza seus jurídicos e legais efeitos.

Com base no contexto fático, sobreveio a decisão agravada.

Por sua vez, o requerido/genitor em âmbito recursal apresenta: I) _e-mail_ da escola com declarações de escolaridade dos infantes, solicitada pela genitora; II) relatórios escolares informando a matrícula dos menores, bem como boletins; III) declarações de participação dos menores em atividades extracurriculares; IV) imagens fotográficas dos menores com o genitor e familiares; V) conversas entre os genitores; VI) laudo médico sobre acompanhamento de um dos filhos, em decorrência de síndrome nefrótica; VII) comprovante de plano de saúde dos menores; VIII) comprovante de renda, residência e automóvel; IX) boletim de ocorrência do ano de 2017, informando agressão da genitora em face do genitor; X) comprovantes de



**Poder Judiciário do Estado de Minas Gerais**
**Tribunal de Justiça**



Nº 1.0000.22.043589-5/001

passagens aéreas – Brasil/EUA; e XI) parecer jurídico sobre a possibilidade de trabalho e permanência nos EUA (ordens 03/23).

Postas as premissas fáticas, identifica-se que por acordo homologado judicialmente, os genitores definiram pela guarda compartilhada dos menores, com a moradia temporária exclusiva junto ao genitor. Registra-se que foram acordadas visitas anuais, tanto no Brasil, como nos EUA, com a finalidade da genitora ter convivência com os filhos.

Além disso, depreende-se que os menores encontram-se nos EUA desde dezembro de 2021 – momento em que foram passar as festividades de final de ano e férias.

Sobre a matéria, a legislação civil estabelece que a guarda compartilhada implica na responsabilização conjunta e o exercício de direitos e deveres do pai e da mãe concernentes ao poder familiar dos filhos comuns. Além disso, a moradia dos filhos será definida com base no melhor interesse dos filhos. Verifica-se:

> Art. 1.583. A guarda será unilateral ou compartilhada. (Redação dada pela Lei nº 11.698, de 2008).
> § 1º Compreende-se por guarda unilateral a atribuída a um só dos genitores ou a alguém que o substitua (art. 1.584, § 5º) e, por guarda compartilhada a responsabilização conjunta e o exercício de direitos e deveres do pai e da mãe que não vivam sob o mesmo teto, concernentes ao poder familiar dos filhos comuns. (Incluído pela Lei nº 11.698, de 2008).
> § 2º Na guarda compartilhada, o tempo de convívio com os filhos deve ser dividido de forma equilibrada com a mãe e com o pai, sempre tendo em vista as condições fáticas e os interesses dos filhos. (Redação dada pela Lei nº 13.058, de 2014)
> I - (revogado); (Redação dada pela Lei nº 13.058, de 2014)
> II - (revogado); (Redação dada pela Lei nº 13.058, de 2014)
> III - (revogado). (Redação dada pela Lei nº 13.058, de 2014)
> **§ 3º Na guarda compartilhada, a cidade considerada base de moradia dos filhos será**

Fl. 9/11

 **Poder Judiciário do Estado de Minas Gerais**
**Tribunal de Justiça**



Nº 1.0000.22.043589-5/001

**aquela que melhor atender aos interesses dos filhos. (Redação dada pela Lei nº 13.058, de 2014)**

Com base no exposto, **a princípio**, observa-se temerária a alteração abrupta da guarda compartilha com moradia dos menores juntos do pai para a pretendida guarda unilateral da genitora para outro país. Ressalta-se que ambos os genitores demonstram interesse e possibilidade na criação dos filhos; os menores possuem vida estrutura no Brasil desde o nascimento; e existe título executivo judicial que não deve ser desconstituído no início do presente processo.

Consigna-se, ao final, que a definição sobre a moradia dos menores demanda cautela, razão pela qual se mostra necessária a atribuição de efeito suspensivo, para que a matéria seja detalhadamente apreciada após o crivo do contraditório perante a Turma Julgadora.

Assim, diante do exposto**, defiro o pedido de efeito suspensivo.**

**Comunique-se o d. Juízo de primeira instância sobre a decisão, nos termos do artigo 1.019, I, do CPC.**

**Intime-se a parte agravada para, querendo, apresentar suas contrarrazões, no prazo de 15 (quinze) dias, nos termos do artigo 1019, II, do CPC.**

**Após, remetam-se os autos à Douta Procuradoria-Geral de Justiça.**

**Publique-se. Intime-se.**

Belo Horizonte, 09 de março de 2022.

DESA. ÂNGELA DE LOURDES RODRIGUES
Relatora

Documento assinado eletronicamente, Medida Provisória nº 2.200-2/2001 de 24/08/2001.
Signatário: Desembargadora ANGELA DE LOURDES RODRIGUES, Certificado: 5323AF1239D6BE0769BF8EB8647DCFCE, Belo Horizonte, 09 de março de 2022 às 16:39:58.
Verificação da autenticidade deste documento disponível em http://www.tjmg.jus.br - nº verificador: 10000220435895001202231278

Fl. 10/11

 Poder Judiciário do Estado de Minas Gerais
Tribunal de Justiça



Nº 1.0000.22.043589-5/001

Judiciary Branch of the State of Minas Gerais
Court of Justice

No 1.0000.22.043589-5/001

(Bar Code)

(Bar Code)
2022000312278

INTERLOCUTORY APPEAL-CV    8th SPECIALIZED CIVIL CHAMBER
No 1.0000.22.043589-5/001      JUIZ DE FORA
Appellant(s)                           N.A.S.J.
Appellee(s)                            N.F.G.

## DECISION

**Examined.**

This is an Interlocutory Appeal, with a request for a stay of proceedings, filed by N.A.S.J. against the decision rendered by the 2nd Family Court of the Juiz de Fora County, in the case file of the Ordinary Action for Amendment of Clause and Cohabitation Regime filed by N.F.G., which granted the request for urgent relief, in the following terms (order 68):

> (...)
> As for the provisional custody, as is well known, in a procedure of this nature, the interest of the minor must always prevail, whose well-being recommends caution, in terms superior to any claim of the parents themselves, as is in the legal provision and is of repeated jurisprudence interpretation of our Courts.
> Upon reviewing the file, it appears that the minors are adapted to the maternal family nucleus, with no elements to contraindicate the granting of the provisional custody, at least in summary cognition.
> Thus, the evidence brought to the file, notably the exams attached to IDs 830080807 and 8300808072 attesting that the minors in question are affected by Covid-19, a situation that, due to the measures to prevent the spread of the disease adopted worldwide nowadays, constitutes an impediment to their immediate return to Brazil and can cause damage to the upbringing of the minors, since in person classes have already been resumed in this County of Juiz de Fora. In this path, assuming that the best interests of the children are met, until a better judgment is formed, and being the kinship bond proven (ID

Judiciary Branch of the State of Minas Gerais
Court of Justice

No 1.0000.22.043589-5/001

82792281390- Pages 1/2), I GRANT the provisional custody of D.M.G.A. and J.M.G.A. to the mother N.F.G. (...)

The defendant, now appellant, argues that "the decision now appealed ended up authorizing the abrupt change of residence of the minors to a foreign country, removing them from the physical custody of the father, now appellant, and, consequently, ratifying the mother's intention to illegally retain the minors abroad, in flagrant violation of the Hague Convention on the Civil Aspects of International Child Abduction, ratified by Brazil through the Decree 3.413/2000".

He adds that "the respectable lower court reversed the natural order of a proceeding whose final objective is to change the residence of minors to a foreign country, and, even if the change of custody of the children is allowed, it certainly should wait the course of the proceedings for greater legal certainty, that is, it should first carry out the psychosocial study, either because there is no serious reason that justifies the immediate change of residence of the minors, or because there is a reverse danger of the delay, in the sense that the situation of the minors in the USA will eventually consolidate, that is, the integration of the minors into their new environment may occur, to the total detriment of the defense of the father, now Appellant, and more, a change of country and reference can represent a traumatic experience for the minors, which should be avoided at this stage of life. In fact, the Superior Court of Justice has already consolidated the understanding that for an international transfer of a minor, it is necessary to carry out a psychosocial study in advance, given that such expert evidence must be carried out by the Court of habitual residence, that is, here in Brazil, where the presence of minors is necessary in Brazil, under penalty of being the process void".

He emphasizes that "the legal custody of the minors is shared, but the physical custody of the minors is exclusive with the father since December 2017, when the mother chose, during a trip alone in the USA, to

Judiciary Branch of the State of Minas Gerais
Court of Justice

No 1.0000.22.043589-5/001

stay there, abandoning Brazil, where she left the minors, without any previous conversation with the father, now Appellant, at the time when the children's physical custody was alternated between the parents during the week. Here, it is worth mentioning an omission in the initial complaint - perhaps intentional, to mislead the Court - with regard to the life history of the minors: they always lived with their father - albeit alternately, in a certain period that was after the rupture of the "common-law marriage" of the parents until the residence solely with the father, now Appellant".

He points out that "by the currently governing rules (established in the second agreement), that in view of the sole physical custody of the minors with the father, he was obliged to pay for the mother's stay when she came to Brazil, every two years, and, alternately, also every two years, the father committed himself to take the children to spend holidays with the mother in the city where she were residing. And, as will be shown below, the now Appellant parent has always complied with these specific obligations -in addition to all others- contrary to what is alleged by the plaintiff, now Appellee, and hereby expressly challenged, even because the father has always granted much more, allowing the mother to remain with the physical custody of the children several times. In this sense, the parents agreed that in the school holidays of 2021/2022, instead of the minors staying 15 days with their mother in her city (USA), the children would stay for 02 (two) months, from mid-December/2021 to mid-February/2022, when the father would bring the minors back to the paternal residence, for the return of in-person classes".

He considers that "despite the involving narrative of the initial complaint, there is no effective proof of which grade/year the minors were enrolled in the school abroad, since the documents linked to ID No. 8279462995 (alleged school curriculum for the minors in the USA), do not

---

Judiciary Branch of the State of Minas Gerais
Court of Justice

No 1.0000.22.043589-5/001

even inform the subjects that are being studied by the minors, and it may even be just a registration as a "listener", without proof of a valid study, in the case of a subsequent return to Brazil. In addition, there is no evidence on file of photograph of the minors in the classroom, for example; there are only photos of rooms (which can even be taken from the internet), or photos of the minors with a backpack, implying that it would be at the entrance of the school, but it can be a mall, or even a summer camp. Thus, at the very least, there is a doubt as to the effective education of the minors in the USA, even because, according to an email from Grambery School (where the minors have studied in Brazil since always), no documentation of the minors that would be required for transfer/enrollment in any other educational institution was delivered to the mother. On the other hand, and in a completely contrary way, the defendant father, herein Appellant, presents reports from Grambery School (attached copies) proving not only the effective school enrollment of the minors for the current academic year of 2022, but also the good socio-pedagogical relationship of the children, corroborated by the excellent performances when she came to Brazil, and more, he even took the children more than once to the USA, where the mother lives, in an interval of less than 1 year, so that they could spend the holidays with their mother, always seeking the best interests of the minors, to maintain the maternal bond".

He considers that "the best interest of children is not always what they express, even considering the factual situation of the case in question, that is, that the minors are coming from a totally atypical situation for everyone, and especially for children, which is the pandemic, where they were limited from socializing, which was followed to the letter by the father, all for the sake of health, and, suddenly, the minors see themselves in a children's paradise, literally, which is Disneyland, with wonderful parks, in which even the mother, now

Judiciary Branch of the State of Minas Gerais
Court of Justice

No 1.0000.22.043589-5/001

---

Appellee, has difficulty imposing limits on their children, according to a message that she herself sent to the father, now Appellant, asking him for help with the children on 01/05/2022".

Therefore, he requests a stay of proceedings. In the end, he requests the analysis, processing, and grant of the appeal, with the reform of the appealed decision.

**It's the brief report.**

**I preliminarily accept** the appeal, because, at first, I see the presence of the intrinsic and extrinsic presuppositions of admissibility.

According to article 995 of the Code of Civil Procedure, as a rule, appeals do not impede the effectiveness of the decision. However, its sole paragraph establishes that the effectiveness of the appealed decision may be suspended by the Reporting Judge. It is quoted:

> Art. 995. Appeals do not impede the effectiveness of the decision, except for legal provision or judicial decision to the contrary. Single paragraph. The effectiveness of the appealed decision may be suspended by the decision of the reporting judge, if from the immediate production of its effects there is a risk of serious harm, difficult or impossible to repair, and the probability of granting the appeal is demonstrated.

With regard to the interlocutory appeal, it is observed that article 1.019 of the same Procedural Diploma provides for the receipt of the interlocutory appeal. In words:

> Art. 1.019. Received the interlocutory appeal in court and distributed immediately, if it is not the case of application of art. 932, items III and IV, the reporting judge, within 5 (five) days:
> I - may grant a stay of proceedings or grant, in anticipation of relief, in whole or in part, the appeal claim, communicating its decision to the judge;
> II - order the subpoena of the appellee in person, by letter with acknowledgment of receipt, when there is no attorney of record, or by the Justice Newspaper, or by letter with acknowledgment of receipt addressed to their

---

Judiciary Branch of the State of Minas Gerais
Court of Justice

No 1.0000.22.043589-5/001

attorney, so that (s)he responds within 15 (fifteen) days, providing him with the documentation deemed necessary for the judgment of the appeal;

III - shall determine the summons of the Public Prosecutor's Office, preferably by electronic means, when it is the case of its intervention, so that it manifests itself within 15 (fifteen) days.

Marinoni, Arenhart and Mitidiero teach about the subject in the treatise Commented Code of Civil Procedure:

Stay of Proceesings. The interlocutory appeal does not, as a rule, grant the stay of the proceedings. The Reporting Judge may, however, suspend the appealed decision, attributing suspensive effect to the appeal until further judgment (art. 1.019, I, CPC). The requirements for granting a stay of the proceedings are those mentioned in art. 1.012, §4, CPC – analogously applicable. The granting of a stay of proceedings is the appropriate measure when the intention is simply to suspend the effects of the contested decision. The Reporting Judge may not grant the stay to the interlocutory appeal on its own, being the request of the party necessary (analogously, art. 1.012, §3, CPC). Once the stay is granted, the Reporting Judge must inform the judge of the case of his decision.

Anticipation of appeal relief. When the appellant seeks the granting of judicial relief denied by the appealed decision, it is obviously not appropriate to postulate the granting of the stay of proceedings, since suspending a judicial omission does not produce any effect at the concrete level. It is strictly necessary that, in this case, the anticipation of the appeal relief be requested - that is, that the Reporting Judge grants exactly that measure that was denied by the appealed decision. The Reporting Judge may do so by fully or partially granting the anticipation of the appeal relief (articles 294, 300, 311 and 1.019, I, of the CPC). The requirements for granting the anticipation relief vary according to the context in which the appellant is inserted. (...) (2015, p.949/950).

It is about an Ordinary Action for Amendment of Clause and Cohabitation Regime filed by N.F.G. (mother) against N.A.S.J. (father), having formulated a request for urgent relief for the granting of sole custody, "being allowed the permanence of the minors in the

Judiciary Branch of the State of Minas Gerais
Court of Justice

No 1.0000.22.043589-5/001

United States in the maternal company, where has been since December 2021"
(order 27).

Along with the initial complaint, it appears that: I) the mother is 41 years
old; II) the mother has a Florida/USA temporary driver's license; III) the minor
children are 12 and 10 years old; IV) copy of the petition for agreement, stating
the sole physical custody with the father, guaranteed free visitation to the mother -
dated July 2018; V) copy of the judgment approving the agreement; VI)
declarations from the minors expressing the desire to live with their mother in the
USA; VII) children's vaccination cards, in the USA; VIII) professional card of the
mother in the USA; IX) photographic images of the mother's new marriage held
in the USA, of the alleged house of the family, of the minors, of social events; X)
indication of the school in which the minors would be enrolled; XI) messages
between the mother and the father dated 2019 - about the possibility of moving
the minors to the USA; XII) audio file, allegedly of the father's current wife;
XIII) there are school curriculum of the minors, dated January 2022; XIV) videos
of conversations between the parties and the request of one of the children to
remain in the USA; and XV) petition dated February 10, 2022, informing the
impossibility of returning to Brazil, because the family had been affected by
COVID-19 (orders 28/54 and 58/59).

Regarding the approved agreement, imperative indication of terms (order
31):

Judiciary Branch of the State of Minas Gerais
Court of Justice

No 1.0000.22.043589-5/001

---

## (IMAGE ATTACHED CONTAINING THE FOLLOWING)

8. In this way, the parents intend, with this petition, to formalize the current form of residence, visitation and alimony of and for the minors, in order to proceed with new regulation of the family legal situation of the children and parents, in the following way:

a) legal custody of the minors will remain shared between the parents, however, the physical custody of the children Diego and Juan becomes temporary exclusively with their father Nivaldo, being guaranteed free visitation to the mother;

b) the father undertakes the obligation to pay, every 02 (two) years -interspersed with item 'c' below-, with the costs of 15 (fifteen) days of accommodation in a hotel (3-star level) in this country, for the mother to enjoy the school holidays with the children Diego and Juan;

---

c) the father undertakes the obligation to take, every 02 (years) -interspersed with item 'b' above-, the children Diego and Juan to spend 15 (fifteen) consecutive days of school holidays in the city where the mother is residing;

d) the mother hereby authorizes the father to carry out international trips with the children Diego and Juan, including to enable the provision of the letter 'c' above, being the mother's signature in this agreement valid as authorization for all purposes, including before the competent authorities, with the mother committing, from now on, to sign any other documents that may be necessary to enable such trips.

9. For all of the foregoing, everything having been agreed upon by common agreement between the parties, in the form presented here, REQUEST Your Honor, after the prosecutor's subpoena, according to the formalities, for the manifestation that (s)he understands appropriate, the **judicial approval of this NEW residence, visitation and alimony agreement**, as agreed herein, by final judgment, **the parties giving up the appeal period,** so that it produces its juridical and legal effects.

Based on the factual context, the appealed decision took place.

In turn, the defendant/father on appeal presents: I) e-mail from the school with statements of schooling of the minors, requested by the mother; II) school reports informing the enrollment of the minors, as well as school transcripts; III) declarations of minors' participation in extracurricular activities; IV) photographic images of minors with the father and family members; V) conversations between the parents; VI) medical report on the follow-up of one of the children, as a result of nephrotic syndrome; VII) proof of the minors' health plan; VIII) proof of income, residence and automobile; IX) police report for the year 2017, informing the mother's aggression against the father; X) proof of

---

Judiciary Branch of the State of Minas Gerais
Court of Justice

No 1.0000.22.043589-5/001

airline tickets – Brazil/USA; and XI) legal opinion on the possibility of working and staying in the USA (orders 03/23).

After the factual premises, it is identified that by agreement approved in court, the parents defined the shared legal custody of the minors, and the temporary sole physical custody with the father. It is recorded that annual visits were agreed, both in Brazil and in the USA, with the purpose of the mother having contact with the children.

Furthermore, it appears that the minors are in the USA since December 2021 – when they went to spend the end-of-year festivities and holidays.

On the matter, civil legislation establishes that shared legal custody implies joint responsibility and the exercise of rights and duties of the father and mother concerning the family power of common children. In addition, the children's physical custody will be determined based on the best interests of the children. Ensure that:

> Art. 1.583. Legal custody will be unilateral or shared. (Wording provided by Statute No. 11.698 of 2008).
> § 1o Unilateral legal custody is understood to be attributed to only one of the parents or to someone who replaces them (art. 1.584, § 5) and, by shared legal custody, the joint responsibility and the exercise of rights and duties of the father and the mother who do not live under the same roof, concerning the family power of common children. (Included by Statute No. 11.698 of 2008).
> § 2 In shared legal custody, the time spent with the children must be divided in a balanced way with the mother and the father, always bearing in mind the factual conditions and the children's interests. (Wording provided by Statute No. 13,058 of 2014)
> I - (revoked); (Wording provided by Statute No. 13,058 of 2014)
> II - (revoked); (Wording provided by Statute No. 13,058 of 2014)
> III - (revoked). (Wording provided by Statute No. 13,058 of 2014)
> **§ 3 In shared legal custody, the city considered the children's home base will be**

Judiciary Branch of the State of Minas Gerais
Court of Justice

No 1.0000.22.043589-5/001

---

**the one that best serves the interests of the children. (Wording provided by Statute No. 13,058 of 2014)**

Based on the above, at first, it seems reckless the abrupt change in the shared legal custody with the physical custody with the father for the intended unilateral legal custody with the mother to another country. It is noteworthy that both parents demonstrate interest and possibility in raising the children; the minors have a structured life in Brazil since birth; and there is a judicial order that must not be dissolved at the beginning of the present proceeding.

In the end, it is noted that the definition of the physical custody of the minors requires caution, which is why it is necessary to assign a stay of proceedings, so that the matter can be analyzed in detail after the sieve of the adversary system before the Judging Panel.

Therefore, in view of the foregoing, **I grant the request for a stay of proceedings.**

**Communicate the decision to the respectable lower Court, pursuant to article 1.019, I, of the CPC.**

**Subpoena the appellee to, if it wishes, present its counterarguments, within 15 (fifteen) days, pursuant to article 1.019, II, of the CPC.**

**Afterwards, the records are sent to the learned Attorney General's Office.**

**Publish it. Subpoena it.**

Belo Horizonte, March 9, 2022.
JUDGE ÂNGELA DE LOURDES RODRIGUES
Reporting Judge

Document signed electronically, Provisional Measure No. 2.200-2/2001 of 08/24/2001.
Signatory: Judge ANGELA DE LOURDES RODRIGUES, Certificate: 5323AF1239D6BE0769BF8EB8647DCFCE, Belo Horizonte, March 9, 2022 at 4:39:58 pm.
Verification of the authenticity of this document available at http://www.tjmg.jus.br – verifier No.: 10000220435895001202231278

---

Verifier Number: 10000220435895001202231278                    Page 10/11

Judiciary Branch of the State of Minas Gerais
Court of Justice

No 1.0000.22.043589-5/001

## CERTIFICATE OF TRANSLATOR'S COMPETENCE

I, Vitor Jacob Cruz, hereby certify that I am competent and proficient in both the <u>English and Portuguese</u> languages, and that the above translation is a true, accurate, and complete rendition of the <u>Portuguese</u> version of the original document.

Signature: _____          Date: _07/17/2022_

Vitor Jacob Cruz

4000 NW 4th Ave, Boca Raton, FL 33431
vitorjacob.vj@gmail.com
(561)342-2020